David T. Biderman (Bar No. 101577)
DBiderman@perkinscoie.com
Joshua A. Reiten (Bar No. 238985)
JReiten@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Facsimile: 415.344.7050

Charles C. Sipos (*pro hac vice*)
CSipos@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Defendants
General Mills, Inc., General Mills Sales, Inc., General
Mills Operations, LLC, and Roxanne Ornelas

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERI VAN LENGEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MILLS, INC.; GENERAL MILLS SALES, INC.; GENERAL MILLS OPERATIONS, LLC, ROXANNE ORNELAS, AND DOES 1-50,<br><br>Defendants. | Case No. 15-cv-02262-MCE-KJN<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), MOTION TO STRIKE CLASS ALLEGATIONS PURSUANT TO FRCP 12(f) AND 23(d)(1)(D), AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**<br><br>Hearing Date:  January 28, 2016<br>Time:  2:00 p.m.<br>Judge:  Hon. Morrison C. England, Jr. |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................. 2

    A.    General Mills Recalls Certain Cheerios and Honey Nut Cheerios and Implements a Refund Program. ....................................................................... 2

    B.    Weeks After the Recall and Refund Program Was Announced, Plaintiffs File a Class Action Complaint Seeking the Same Relief General Mills Is Offering. ............................................................................................................ 4

III. THE LEGAL STANDARDS GOVERNING THIS MOTION ......................... 5

    A.    Motion to Dismiss Under Rule 12(b)(1). .................................................. 5

    B.    Motion to Strike Under Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D). ....................... 6

    C.    Motion to Dismiss Under Rule 12(b)(6). .................................................. 7

IV. ARGUMENT ...................................................................................................... 8

    A.    The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction. ...................................................................................................... 8

        1.    The Court Should Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction Due to General Mills' Cheerios Recall/Refund Program. ................................................................. 8

        2.    Plaintiffs Lack Standing to Pursue Injunctive Relief. .............................. 11

    B.    The Court Should Strike the Class Allegations Because Plaintiffs Cannot Meet the Requirements of Rule 23 in View of General Mills' Recall and Refund Program. ............................................................................................... 12

        1.    Plaintiffs Cannot Establish That a Class Action Is a Superior Procedure Under Rule 23(b)(3). ................................................................ 13

        2.    Plaintiffs Are Inadequate Class Representatives. ..................................... 14

        3.    The Proposed Class Is Overbroad Because It Contains Many Putative Class Members Who Have Suffered No Injury. ........................ 15

    C.    The Court May Separately Dismiss Each Cause of Action for Failure to State a Claim Under Rule 12(b)(6). ................................................................ 16

        1.    Plaintiffs Fail to State a Claim Under the UCL. ...................................... 17

        2.    Plaintiffs Fail to State a Claim for Unjust Enrichment. ........................... 17

        3.    Plaintiffs Fail to State a Claim for Breach of Express Warranty. ............. 18

        4.    Plaintiffs Fail to State a Claim Under the CLRA. .................................... 18

        5.    Plaintiffs Fail to State Any Claim Against Individual Defendant Roxanne Ornelas. ................................................................................... 19

V. CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alvarez v. Chevron Corp.,*
    656 F.3d 925 (9th Cir. 2011)....................................................................18

*Amirhamzeh v. Chase Bank USA, N.A.,*
    No. 13cv00527, 2014 WL 641705 (C.D. Cal. Feb. 7, 2014) ....................10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).....................................................................................7

*Bates v. United Parcel Serv., Inc.,*
    511 F.3d 974 (9th Cir. 2007)......................................................................11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).....................................................................................7

*Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
    637 F.3d 1047 (9th Cir. 2011)................................................................7, 19

*Cattie v. Wal-Mart Stores, Inc.,*
    504 F. Supp. 2d 939 (S.D. Cal. 2007) .......................................................11

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983).................................................................................11, 12

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994)..........................................................................8

*Cty. of Los Angeles v. Davis,*
    440 U.S. 625 (1979)......................................................................................8

*Durrell v. Sharp Healthcare,*
    183 Cal. App. 4th 1350 (2010) ..................................................................17

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.,*
    No. 14cv04809, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015).................17

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014)...................................................................7, 19

*Edwards v. Zenimax Media Inc.,*
    No. 12-cv-00411, 2012 WL 4378219 (D. Colo. Sept. 25, 2012)...............16

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011).......................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page

*Foster v. Carson*,
347 F.3d 742 (9th Cir. 2003)..........................................................................9

*GCB Commc'ns v. U.S. S. Commc'ns*,
650 F.3d 1257 (9th Cir. 2011)........................................................................8

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)........................................................................................6

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1523 (2013)....................................................................................5

*Green v. United States*,
630 F.3d 1245 (9th Cir. 2011)........................................................................6

*Heighley v. J.C. Penney Life Ins. Co.*,
257 F. Supp. 2d 1241 (C.D. Cal. 2003) .......................................................17

*Hernandez v. McClanahan*,
996 F. Supp. 975 (N.D. Cal. 1998) ................................................................5

*Hodgers-Durgin v. De La Vina*,
199 F.3d 1037 (9th Cir. 1999).......................................................................12

*In re Aqua Dots Prods. Liab. Litig.*,
270 F.R.D. 377 (N.D. Ill. 2010).....................................................................14

*In re Aqua Dots Prods. Liab. Litig.*,
654 F.3d 748 (7th Cir. 2011)....................................................................2, 14

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009)..........................................................................15

*In re PPA Prods. Litig.*,
214 F.R.D. 614 (W.D. Wash. 2003) .............................................................13

*In re Sony PS3 Other OS Litig.*,
551 F. App'x 916 (9th Cir. 2014) ..................................................................17

*Kagan v. Gibraltar Sav. and Loan Ass'n*,
35 Cal. 3d 582 (1984) ...................................................................................18

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)..........................................................................7

-ii-

**TABLE OF AUTHORITIES**
(continued)

Page

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir. 2001)..................................................................8

*Leonard v. Abbott Labs., Inc.,*
10-cv-4676, 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012).........................14

*Loreto v. Procter & Gamble Co.,*
No. 09cv815, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ................15

*Lujan v. Def. of Wildlife,*
504 U.S. 555 (1992) ............................................................................11

*Luman v. Theismann,*
No. 13cv00656, 2014 WL 443960 (E.D. Cal. Feb. 4, 2014) ........9, 10, 11

*Mason v. Nature's Innovation, Inc.,*
No. 12-cv-3019, 2013 WL 1969957 (S.D. Cal. May 13, 2013) ...............12

*McVicar v. Goodman Global, Inc.,*
1 F. Supp. 3d 1044, 1059 (C.D. Cal. 2014) ........................................17

*Midpeninsula Citizens for Fair Hous. v. Westwood Inv'rs,*
221 Cal. App. 3d 1377 (1990).............................................................10

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.,*
No. 14cv2006, 2015 WL 510919 (N.D. Cal. Feb. 5, 2015)....................17

*Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.,*
No. 14-cv-00645, 2014 WL 6851964 (D. Or. Dec. 3, 2014)...................6

*Pagan v. Abbott Labs., Inc.,*
287 F.R.D. 139 (E.D.N.Y. 2012) ........................................................13

*People v. Nat'l Ass'n of Realtors,*
120 Cal. App. 3d 459 (1981)...............................................................10

*Powell v. McCormack,*
395 U.S. 486 (1969)..............................................................................8

*Prudential Home Mortg. Co. v. Superior Court,*
66 Cal. App. 4th 1236 (1998) .............................................................17

*Rio Props., Inc. v. Rio Int'l Interlink,*
284 F.3d 1007 (9th Cir. 2002)...............................................................6

# TABLE OF AUTHORITIES
## (continued)

Page

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ...........................................................6, 15, 16

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ..................................................................18

*Stock West, Inc. v. Confederated Tribes*,
   873 F.2d 1221 (9th Cir. 1989)...................................................................................5

*Tietsworth v. Sears, Roebuck & Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..............................................................6, 13

*Tosh-Surryhne v. Abbott Labs. Inc.*,
   No. 10cv2603, 2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) .......................8, 9, 10

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State,
   Inc.*,
   454 U.S. 464 (1982) ..................................................................................................5

*Vavak v. Abbott Labs., Inc.*,
   No. 10cv1995, 2011 WL 10550065 (C.D. Cal. June 17, 2011)...........................8, 10

*Waller v. Hewlett-Packard Co.*,
   295 F.R.D. 472 (S.D. Cal. 2013).................................................................11, 13, 14

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013).....................................................................................12

*Webb v. Carter's Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) .............................................................................13

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (2010) ..................................................................................1

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
   681 F.3d 1208 (10th Cir. 2012).............................................................................9, 10

*Wolfe v. Strankman*,
   392 F.3d 358 (9th Cir. 2004)......................................................................................6

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001)...................................................................................13

**STATUTES**

Cal. Civ. Code § 1780 ....................................................................................................18

# TABLE OF AUTHORITIES
### (continued)

**Page**

Cal. Civ. Code § 1782(b) ............................................................................................................18

Cal. Com. Code § 2607 ..............................................................................................................18

California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*)...................... passim

California's Unfair Business Practices Act (Cal. Bus. & Prof. Code § 17200, *et seq.*)............................................................................................................4, 10, 17

California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*) ..................... passim

Fed. R. Civ. P. 8(a) .......................................................................................................................7

Fed. R. Civ. P. 9(b) ..................................................................................................................7, 19

Fed. R. Civ. P. 12(b)(1)........................................................................................................1, 5, 6, 8

Fed. R. Civ. P. 12(b)(6).....................................................................................................6, 7, 8, 16

Fed. R. Civ. P. 12(f) .................................................................................................................6, 20

Fed. R. Civ. P. 12(h)(3).................................................................................................................5

Fed. R. Civ. P. 23 ..........................................................................................................12, 13, 15

Fed. R. Civ. P. 23(a)......................................................................................................................12

Fed. R. Civ. P. 23(a)(4).................................................................................................................14

Fed. R. Civ. P. 23(b)(3)...........................................................................................................12, 13

Fed. R. Civ. P. 23(c)(1)(A) ...........................................................................................................6

Fed. R. Civ. P. 23(d)(1)(D) .......................................................................................................6, 20

**OTHER AUTHORITIES**

Article III, § 2 of the United States Constitution ..................................................................5, 8, 11

1   **I.   INTRODUCTION**

2         Plaintiffs and their counsel are using class action litigation to try to capitalize on a

3   problem that has already been solved: restitution for product purchases the Defendants have

4   already offered to refund or replace. Under on-point authority from this District, the Complaint

5   must be dismissed as moot because the Plaintiffs have already been offered the very relief their

6   lawsuit seeks, and so there is no "live" controversy for this Court to adjudicate. Similarly, the

7   case cannot proceed as a class action because no class can be certified where the Plaintiffs are

8   unnecessarily seeking a remedy that is already at the putative class's disposal.

9         General Mills manufactures Original Cheerios ("Original" or "Yellow Box Cheerios") and

10  Honey Nut Cheerios cereals. These cereals are formulated and manufactured to be gluten free. In

11  July 2015, an isolated rail service incident at one of General Mills' manufacturing plants in Lodi,

12  California resulted in the inadvertent introduction of wheat flour into the gluten-free flour used to

13  make Yellow Box Cheerios and Honey Nut Cheerios cereals on certain identified production

14  dates. To redress this incident, and working in conjunction with the United States Food and Drug

15  Administration ("FDA"), on October 5, 2015, General Mills instituted a voluntary recall and

16  refund program for the affected cereals. The recall and refund program was widely publicized by

17  General Mills and the FDA.

18        Instead of availing themselves of this remedy, on October 30 Plaintiffs Keri Van Lengen

19  and Deborah Nava filed this putative class action seeking to recover relief that General Mills had

20  already offered them and all putative class members—a refund of the purchase price of the

21  affected cereals. As a result, the Complaint and its class allegations are subject to dismissal on

22  multiple grounds.

23        *First*, Plaintiffs do not have a live claim for economic damages or injunctive relief

24  because—in the face of General Mills' recall and offer for a full refund—they have no economic

25  injury and no likelihood of future injury. Accordingly, the Court should dismiss Plaintiffs'claims

26  under Rule 12(b)(1) as moot because they seek relief redundant of what is already being offered.

27        *Second*, on its face the Complaint does not meet multiple class action requirements.

28  Numerous courts have held that a class action, and all of its attendant costs and delays, is not a

DEFENDANTS' MPA IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE
Case No. 15-cv-02262-MCE-KJN

"superior" way to redress an issue that the defendant has already resolved through a recall and refund program. Similarly, the Plaintiffs cannot adequately represent the interests of the class. As one court has explained, "a representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests."[1]

*Third*, and independent of these defects, the Complaint's allegations fail to state claims for each of the particular causes of action alleged under the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), the Consumer Legal Remedies Act ("CLRA"), unjust enrichment, or breach of express warranty.

*Fourth*, the Complaint fails to state *any* claim for relief against Individual Defendant Roxanne Ornelas. There are no plausible factual allegations in the Complaint to show that Ms. Ornelas was involved in the "Gluten Free" labeling of the Cheerios cereals at issue.

The Court should dismiss the Complaint with prejudice.

## II.   FACTUAL BACKGROUND

### A.   General Mills Recalls Certain Cheerios and Honey Nut Cheerios and Implements a Refund Program.

General Mills manufactures and distributes food products under numerous well-known brands: Pillsbury, Nature Valley, and the brand at issue in this litigation, Cheerios. Compl. ¶¶3, 24. Beginning in July 2015, General Mills implemented a formula and manufacturing process to produce certain of its Cheerios cereals without gluten, including Yellow Box Cheerios and Honey Nut Cheerios. *Id.* ¶¶10-11. At the same time, General Mills labeled the products as "Gluten Free," for the information of those consumers who are gluten intolerant or who have Celiac disease (a condition that affects the digestibility of gluten in affected individuals). *Id.* ¶¶3-7. As pled in the Complaint, gluten sensitivity affects a relatively small proportion of the overall population. *Id.* ¶6 (quoting FDA website indicating approximately 3 million people affected with Celiac disease, which is slightly less than 1% of the total United States population). Purchasers of Yellow Box

---

[1] *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011).

DEFENDANTS' MPA IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE
Case No. 15-cv-02262-MCE-KJN

1  Cheerios or Honey Nut Cheerios without gluten sensitivities are unaffected by the presence or

2  absence of gluten in the products. *Id.* ¶¶3-7.

3      On certain dates in July 2015, General Mills' processing facility in Lodi, California lost

4  rail service, and the gluten-free oat flour used in gluten-free Cheerios and Honey Nut Cheerios

5  was off-loaded from rail cars and transferred to trucks. RJN Ex. 3. This isolated incident resulted

6  in wheat flour being inadvertently introduced into the gluten-free oat flour system at Lodi, which

7  was then introduced into some gluten-free Cheerios and Honey Nut Cheerios. *Id.* Wheat flour

8  contains gluten, which may affect that subset of Cheerios purchasers who are gluten intolerant or

9  who have Celiac disease. *Id.; see also* Compl. ¶¶4-5. The incident affected a small amount of

10  Cheerios production from Lodi in July, and products manufactured on specific dates and from

11  specific lots were identified as the affected product. Compl. ¶15.

12      On October 5, 2015, General Mills announced a voluntary recall of approximately

13  1.8 million units of the Cheerios and Honey Nut Cheerios produced in its Lodi facility on the

14  dates that wheat may have been introduced into the products. Compl. ¶15; Declaration of Jeff

15  Hagen ("Hagen Decl.") ¶2. Any consumer who purchased gluten-free Cheerios and Honey Nut

16  Cheerios bearing certain "Better If Used By" code dates (*see id.*) is eligible for a full refund or

17  replacement by simply contacting General Mills. *See* RJN Ex. 4 ("Consumers with wheat

18  allergies, celiac disease or gluten intolerance should not consume products bearing the affected

19  code dates and should contact General Mills for a replacement or full refund."). General Mills has

20  a website that prominently features information about the recall, and established a dedicated 1-

21  800 number for responding to consumer inquires and requests for refund or replacement of

22  affected Cheerios. Hagen Decl. ¶3; RJN Ex. 3. Consumers could also contact General Mills

23  through its established 1-800 Consumer Services contact line for cereal (which is listed on

24  Cheerios' packaging), any of the 800 numbers for other General Mills products, US Mail, email

25  through Contact Us forms on the Cheerios and General Mills websites, and through Cheerios

26  social media sites. Hagen Decl. ¶3. General Mills also issued a press release to media outlets

27  nationwide with information about the recall; the recall and accompanying product replacement

28  or refund program was widely reported on by the national press. *Id.* Exs. 4, 5. The recall was

1    conducted with the cooperation of the FDA, who likewise publicized the fact of the recall and

2    General Mills' associated refund and replacement program. *Id.* Exs. 1, 2.

3        Consumers contacting General Mills about the affected product can obtain a one-for-one

4    replacement of, or refund for, any affected Cheerios cereal they purchased. Hagen Decl. ¶4.

5    Consumers can obtain replacement or refund for up to eight boxes of Cheerios without providing

6    General Mills with the affected product or its packaging, receipts, or any other evidence of

7    purchase. *Id.* ¶5. For refunds or replacements beyond eight boxes, General Mills requests only the

8    UPC code and "Better if Used By" panel from the affected Cheerios the consumer purchased. *Id.*

9    General Mills' refund and replacement program goes so far as to allow consumers to obtain this

10   same relief for any Cheerios cereal that they purchased labeled "Gluten Free," even if that

11   product was *not* part of the limited production of Cheerios cereal affected by the recall. *Id.* ¶6.

12       **B.    Weeks After the Recall and Refund Program Was Announced, Plaintiffs File**

13       **a Class Action Complaint Seeking the Same Relief General Mills Is Offering.**

14       Three weeks after General Mills announced the recall and refund program, on October 30,

15   2015, Plaintiffs filed their putative class action complaint asserting claims for: (1) violation of

16   California's Unfair Business Practices Act (Cal. Bus. & Prof. Code § 17200, *et seq.*); (2) violation

17   of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*); (3) violation of

18   California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*); (4) unjust

19   enrichment; and (5) breach of express warranty. *See* Compl. ¶¶46-87.

20       The key allegation underlying each of these claims is that General Mills labeled and

21   advertised the affected cereals as "Gluten Free" when they were not. *See, e.g., id.* ¶¶47, 56, 69, 74,

22   86. The Complaint pleads awareness that the affected cereal was recalled by General Mills,

23   parroting facts referenced in General Mills' press release announcing the recall. *See* Compl. ¶¶15,

24   36; *compare id.* ¶15 ("On October 5, 2015, General Mills recalled a reported 1.8-million boxes of

25   Cheerios. Recalled were 13 lots of Honey Nut Cheerios and 4 lots of original Cheerios

26   manufactured at its Lodi, California plant.") *with* RJN Ex. 2 ("This voluntary recall includes four

27   days production of original (yellow box) Cheerios, and thirteen days of production of Honey Nut

28   Cheerios at its Lodi, California facility with the following 'BETTER IF USED BY' code

DEFENDANTS' MPA IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE
Case No. 15-cv-02262-MCE-KJN

1  dates[.]"). Similarly, the Complaint pleads awareness of the FDA's associated investigation of the

2  recalled cereals. Compl. ¶16.

3       Plaintiffs seek to represent a nationwide class of "all persons or entities who purchased

4  Cheerios or Honey Nut Cheerios advertised as gluten-free, and which were not gluten-free."

5  Compl. ¶32. Plaintiffs seek a "return of the purchase prices of the 'Gluten Free' Cheerios," and

6  injunctive relief in the form of an order notifying putative class members of the recall and ceasing

7  distribution of any affected product. *Id.* at ¶¶18-19. This is the same relief that General Mills is

8  already offering to Plaintiffs and putative class members via the recall and refund program. *See*

9  RJN Ex. 3; Hagen Decl. ¶¶4-7.

10      In addition to naming three corporate entities as Defendants—General Mills, Inc., General

11  Mills Sales, Inc., and General Mills Operations, LLC (hereinafter "General Mills")—the

12  Complaint also separately names Ms. Roxanne Ornelas as a Defendant. *See* Compl. ¶25. The

13  Complaint alleges Ms. Ornelas was "Manufacturing Manager" at the Lodi plant (*see id.*), but

14  outside of that sole conclusory allegation the Complaint does not contain any factual allegation

15  directed at Ms. Ornelas's involvement in the "Gluten Free" claim at issue in the lawsuit, or

16  related to the recall generally.

## III.   THE LEGAL STANDARDS GOVERNING THIS MOTION

### A.   Motion to Dismiss Under Rule 12(b)(1).

19      Lack of subject matter jurisdiction may be raised by any party at any time, and "[i]f the

20  court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

21  action." Fed. R. Civ. P. 12(h)(3); *Hernandez v. McClanahan*, 996 F. Supp. 975, 977 (N.D. Cal.

22  1998). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary

23  affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.

24  1989). Pursuant to Article III, § 2 of the United States Constitution, the "case or controversy"

25  requirement "restricts the authority of the federal courts to resolving 'the legal rights of litigants

26  in actual controversies.'" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013)

27  (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*,

28  454 U.S. 464, 471 (1982)).

1    The plaintiff in a case bears the burden of establishing that the court has jurisdiction. *Rio*

2    *Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). In deciding a Rule 12(b)(1)

3    motion, and unlike a motion brought under Rule 12(b)(6), the court may consider materials

4    beyond the pleadings when a defendant makes a factual challenge to subject matter jurisdiction.

5    *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Accordingly, declarations and related

6    evidence that goes to the court's subject matter jurisdiction may be submitted and considered

7    when deciding a motion to dismiss under Rule 12(b)(1). *See Green v. United States*, 630 F.3d

8    1245, 1248 n.3 (9th Cir. 2011) ("On a motion to dismiss for lack of subject matter jurisdiction

9    under Fed. R. Civ. P. 12(b)(1), proof of jurisdictional facts may be supplied by affidavit,

10   declaration, or any other evidence properly before the court, in addition to the pleadings

11   challenged by the motion.").

12   **B.      Motion to Strike Under Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D).**

13   Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure,

14   which states that "[t]he court may strike from a pleading an insufficient defense or any redundant,

15   immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). When it is practicable to do

16   so early in a putative class action, a court should determine that an action cannot properly be

17   certified for class treatment. *See* Fed. R. Civ. P. 23(c)(1)(A); *Sanders v. Apple Inc.*, 672 F. Supp.

18   2d 978, 989-90 (N.D. Cal. 2009); *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, No. 14-cv-00645, 2014

19   WL 6851964, at *11, *18 (D. Or. Dec. 3, 2014) (striking subclass on Rule 12(f) grounds).

20   Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), the court has

21   authority to strike class allegations prior to discovery if the complaint demonstrates that a class

22   action cannot be maintained. *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146

23   (N.D. Cal. 2010). "Where the complaint demonstrates that a class action cannot be maintained on

24   the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders*,

25   672 F. Supp. 2d at 990. While class allegations may also be tested on a motion for class

26   certification, "[s]ometimes the issues are plain enough from the pleadings to determine whether

27   the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen.*

28   *Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

DEFENDANTS' MPA IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE
Case No. 15-cv-02262-MCE-KJN

**C.     Motion to Dismiss Under Rule 12(b)(6).**

Rule 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). The Ninth Circuit employs a two-step process for evaluating a pleading for plausibility:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citation omitted).

Rule 9(b) imposes a heightened pleading standard on a party alleging fraud and requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation and brackets omitted).[2]

---

[2] Rule 9(b)'s heightened pleading standard extends to UCL and CLRA claims when they are grounded in fraud, even when fraud itself is not raised as a cause of action. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL where the claim "sounds in fraud") (internal citation omitted). Where a plaintiff alleges a unified course of fraudulent action and relies on that conduct as the basis of a claim (including claims alleging a UCL, FAL, or CLRA violation), that claim is said to "sound in fraud," even if the word "fraud" is not used. *Id.* at 1125. In that event, the pleading of the claim as a whole must satisfy the particularity requirements of Rule 9(b). *Id.* at 1125, 1127.

DEFENDANTS' MPA IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE
Case No. 15-cv-02262-MCE-KJN

When deciding a motion to dismiss under Rule 12(b)(6), the court generally may not consider any material beyond the pleadings. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

## IV.    ARGUMENT

### A.    The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction.

#### 1.    The Court Should Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction Due to General Mills' Cheerios Recall/Refund Program.

Rule 12(b)(1) allows a party to move for dismissal based on lack of subject matter jurisdiction. Article III requires a "live" controversy for the court to adjudicate in order to have subject matter jurisdiction. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). A case can be rendered "moot" for purposes of Article III, and without a live controversy to decide, where "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). Mootness, and thus an accompanying lack of subject matter jurisdiction, occurs where "an opposing party has agreed to everything the other party has demanded." *GCB Commc'ns v. U.S. S. Commc'ns*, 650 F.3d 1257, 1267 (9th Cir. 2011).

Courts routinely recognize that where a plaintiff sues on an allegedly defective or contaminated product that has already been recalled, for which the plaintiff can receive a refund or replacement, the plaintiff's claims are moot. In those circumstances, courts hold that the defendant's offer of a full refund deprives the court of subject matter jurisdiction because the plaintiff's claim for relief has been nullified. *See Tosh-Surryhne v. Abbott Labs. Inc.*, No. 10cv2603, 2011 WL 4500880, at *5 (E.D. Cal. Sept. 27, 2011) ("defendant has made a full offer of restitution to plaintiff for the recalled containers of Similac plaintiff alleges she purchased . . . This offer . . . strips this court of jurisdiction"); *Vavak v. Abbott Labs., Inc.*, No. 10cv1995, 2011 WL 10550065, at *3 (C.D. Cal. June 17, 2011) ("Because Abbott offered a full refund to consumers who purchased infant formula from the affected lots, Plaintiff's request for

restitution of the monies spent on the product is moot. That Plaintiff rejected a full refund and opted to file suit does not change this result.") (internal citation omitted); *Luman v. Theismann*,No. 13cv00656, 2014 WL 443960, at *4 (E.D. Cal. Feb. 4, 2014) ("In other words, if a plaintiff seeks only restitution, which had been offered . . . before the claim was brought, there can be no claim; rather, any claim brought at that point is an unnecessary call upon this court's resources.") (citation omitted) (dismissing as moot lawsuit seeking refund of product for which defendant had already offered refund); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1214-15 (10th Cir. 2012) (dismissing claims related to allegedly defective automobile on mootness grounds because of already-instituted recall program overseen by NHTSA); *see also Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) ("Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (citation omitted).

Judge Mueller's decision in *Tosh-Surryhne v. Abbott Laboratories Inc.* is on point. In *Tosh-Surryhne*, the plaintiff brought a putative class action seeking restitution for purchases of Similac infant formula, which the defendant had recalled due to potential contamination of the product. 2011 WL 4500880, at *4. The plaintiff likewise sought injunctive relief as to the advertising of the product. *Id.* at *1. As part of the recall, the defendant established a program that allowed purchasers to return affected product and receive a coupon to obtain a free replacement, or, if purchasers had receipts, the defendant offered to refund the plaintiff's purchase. *Id.* The court granted defendant's motion to dismiss on mootness grounds, explaining that the recall and refund program provided the plaintiff with full and adequate relief and therefore deprived the court of subject matter jurisdiction over the claim. *Id.* at *4-5. The court reasoned that the defendant's full offer of restitution was dispositive:

> The court finds that the defendant has made a full offer of restitution to plaintiff for the recalled containers of Similac plaintiff alleges she purchased, even as to those for which she provides no evidence. This offer moots plaintiff's claims and strips this court of jurisdiction.

*Id.* at *5. *Tosh-Surryhne* is in accord with several other decisions holding that a defendant's offer of restitution to the plaintiff, particularly in the case of a product recall, moots the claim for relief.

1  *See Vavak*, 2011 WL 10550065, at *5 (offer of refund for recalled product rendered case moot);

2  *Luman*, 2014 WL 443960, at *4 (dismissing as moot lawsuit seeking refund of product for which

3  defendant had already offered refund); *Amirhamzeh v. Chase Bank USA, N.A.*, No. 13cv00527,

4  2014 WL 641705, at *7 (C.D. Cal. Feb. 7, 2014) (same); *see also Winzler*, 681 F.3d at 1214-15.

5        Here, General Mills' recall program was instituted on October 5, 2015, and as of that date

6  consumers nationwide were eligible to request and receive refunds or a replacement for affected

7  product. Hagen Decl. ¶¶2-7; *see also* RJN Exs. 1-5. That relief still remains available to

8  consumers, including Plaintiffs. *Id.* This recall is being conducted in conjunction with the FDA,

9  who has likewise publicized the recall, notified consumers of the affected lots of Cheerios cereal,

10  and posted the General Mills press release notifying consumers of the availability of refunds. RJN

11  Exs. 1, 2. Plaintiffs' Complaint itself evidences that they are well aware of the recall, as the

12  Complaint identifies the fact of the recall and the specific lots affected. *See* Compl. ¶15; *see also*

13  RJN Ex. 3. Plaintiffs were eligible for a refund on the date they filed the Complaint that would

14  give them the same economic relief they seek in their lawsuit related to damages based on the

15  purchase of allegedly mislabeled products. Indeed, and as in *Tosh-Surryhne*, Plaintiffs do not

16  even need to "provide evidence" of purchase to obtain the relief. Hagen Decl. ¶¶4-6; *Tosh-*

17  *Surryhne*, 2011 WL 4500880, at *5. Accordingly, the Complaint should be dismissed as lacking

18  subject matter jurisdiction because Plaintiffs' claims are moot given General Mills' recall and

19  accompanying offer of refunds. *See Tosh-Surryhne*, 2011 WL 4500880, at *5; *Vavak*, 2011 WL

20  10550065, at *5; *Luman*, 2014 WL 443960, at *4; *Amirhamzeh*, 2014 WL 641705, at *7; *Winzler*,

21  681 F.3d at 1214-15.

22        The same is true for Plaintiffs' request for injunctive relief. Any claim for injunctive relief

23  under Cal. Bus. & Prof. Code §§ 17200 and 17500 is moot because General Mills has recalled all

24  the affected products and made refunds available. *Vavak*, 2011 WL 10550065, at *4 (dismissing

25  claim for injunctive relief as moot in light of defendant's ongoing recall and refund program); *see*

26  *also Midpeninsula Citizens for Fair Hous. v. Westwood Inv'rs*, 221 Cal. App. 3d 1377, 1393

27  (1990) (injunction under § 17200 "would be meaningless" because defendant had ceased its

28  allegedly discriminatory rental policy); *People v. Nat'l Ass'n of Realtors*, 120 Cal. App. 3d 459,

1    476 (1981) ("[W]here the injunction is sought solely to prevent recurrence of proscribed conduct

2    which has, in good faith been discontinued, there is no equitable reason for an injunction.").

3              **2.       Plaintiffs Lack Standing to Pursue Injunctive Relief.**

4              Plaintiffs' claims for injunctive relief should be dismissed for the additional reason that

5    they fail to allege a reasonable likelihood of future injury from the labeling, advertising or sale of

6    gluten-contaminated products as "Gluten Free" and thus lack Article III standing to pursue that

7    claim. To establish Article III standing, Plaintiffs must show that they suffered an injury that is

8    "likely" and not just "speculative[ly]" to be "redressed by a favorable decision." *Lujan v. Def. of*

9    *Wildlife*, 504 U.S. 555, 560-61 (1992) (citation omitted). To establish an injury in fact, the harm

10   suffered by a plaintiff must be "concrete and particularized" (*id*. at 560), and there must be "a

11   sufficient likelihood that [he or she] will again be wronged in a similar way." *Bates v. United*

12   *Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461

13   U.S. 95, 111 (1983)).

14             Plaintiffs concede that General Mills has recalled the contaminated cereal products and

15   has offered a refund to all purchasers. Compl. ¶15. As a result of General Mills' recall, there is no

16   risk of alleged misrepresentation in the future because there is no longer a chance that Plaintiffs

17   will purchase gluten-contaminated products from the affected lots in reliance on "Gluten Free"

18   claims. *See Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 475 (S.D. Cal. 2013) (suggesting

19   plaintiff has no standing to seek injunctive relief because defendants' software fix resolved the

20   alleged misrepresentations and thus no risk of such misrepresentations causing future harm); *see*

21   *also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) (noting that it is

22   unclear how injunctive relief will redress plaintiff's injury where plaintiff knows truth behind

23   allegedly false advertising).

24             Plaintiffs do not allege that they are likely to purchase the contaminated products again or

25   that they are still deceived by General Mills' alleged misrepresentations. Accordingly, Plaintiffs

26   fail to allege that there is any likelihood that they will be wronged in a similar way in the future,

27   and so lack standing to pursue injunctive relief. *See Luman*, 2014 WL 443960, at *7 ("Plaintiffs

28   do not plead they continue to be misled by defendants' advertisements, nor do they plead any

DEFENDANTS' MPA IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE
Case No. 15-cv-02262-MCE-KJN

1   facts indicating they are likely to be misled again. Instead, plaintiffs' allegations that defendants

2   have deceived them suggest that the probability they will be injured again by defendants' alleged

3   deception is infinitesimal.") (dismissing claim for injunctive relief for lack of standing); *Mason v.*

4   *Nature's Innovation, Inc.*, No. 12-cv-3019, 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013)

5   ("[A] plaintiff does not have standing to seek prospective injunctive relief against a manufacturer

6   or seller engaging in false or misleading advertising unless there is a likelihood that the plaintiff

7   would suffer future harm from the defendant's conduct—i.e., the plaintiff is still interested in

8   purchasing the product in question.").

9          Because General Mills' recall and refund program provides the economic damages sought

10   by Plaintiffs and because it negates any possibility of future harm, the Court should dismiss the

11   Complaint for lack of subject matter jurisdiction.[3]

12   **B.      The Court Should Strike the Class Allegations Because Plaintiffs Cannot
          Meet the Requirements of Rule 23 in View of General Mills' Recall and
13        Refund Program.**

14          Under Rule 23(a), a plaintiff seeking to maintain a class action must establish that (1) the

15   class is so numerous that joinder of all members is impracticable, (2) there are questions of law or

16   fact common to the class, (3) the claims or defenses of the representative parties are typical of the

17   claims or defenses of the class, and (4) the representative parties will fairly and adequately protect

18   the interests of the class. Fed. R. Civ. P. 23(a); *see also Wang v. Chinese Daily News, Inc.*, 737

19   F.3d 538, 542 (9th Cir. 2013). For class actions maintained under Rule 23(b)(3), plaintiffs must

20

21   [3] Even if Plaintiffs had asserted a sufficient likelihood of future injury to satisfy the standing
     inquiry—which they have not—their equitable remedies claims must still be dismissed on the
22   alternative ground advanced in *Lyons*: "The equitable remedy is unavailable absent a showing of
     irreparable injury, a requirement that cannot be met where there is no showing of any real or
     immediate threat that the plaintiff[s] will be wronged again—a 'likelihood of substantial and
23   immediate irreparable injury.'" 461 U.S. at 111 (citation omitted); *see Hodgers-Durgin v. De La
     Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999) (even if plaintiff alleges case or controversy
24   requirement for standing, equitable remedies are still unavailable absent a showing of irreparable
     injury). Because the Complaint concedes that the affected cereal products have been recalled,
25   Plaintiffs have failed to allege any facts suggesting they will face any injury from the affected
     cereal products in the future. Thus, the injunction they seek barring General Mills from allegedly
26   misrepresenting the gluten-free aspects of the affected cereal products is entirely removed from
     the actual facts of this case. *See Lyons*, 461 U.S. at 111 ("The speculative nature of . . . claim of
27   future injury requires a finding that this prerequisite of equitable relief has not been fulfilled.")
     Therefore, because Plaintiffs seek only equitable remedies for their UCL, FAL, and CLRA (as
28   pleaded) claims, each of these must be dismissed.

also demonstrate the superiority of maintaining a class action and show that the questions of law or fact common to class members predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189-92 (9th Cir. 2001). Class allegations can be stricken at the pleading stage where it is apparent that prerequisites of Rule 23 cannot be met. *Tietsworth*, 720 F. Supp. 2d at 1146.

Here, it is undisputed that General Mills has instituted a recall and refund program for the very products for which Plaintiffs now seek to recover the purchase price on a classwide basis. *See* Compl. ¶15; RJN Exs. 1-5. Under applicable authority, this necessarily means that Plaintiffs cannot show that a class action is superior. It also means that Plaintiffs are not adequate representatives of the putative class. Finally, Plaintiffs propose a vastly overbroad class definition. The Court should therefore strike Plaintiffs' class allegations.

### 1.   Plaintiffs Cannot Establish That a Class Action Is a Superior Procedure Under Rule 23(b)(3).

Under the second prong of Rule 23(b)(3), referred to as the superiority element, courts must examine whether a class action is superior to other methods of adjudication. *See Zinser*, 253 F.3d at 1190; Fed. R. Civ. P. 23(b)(3). Courts have repeatedly held that class actions are not a superior method of adjudication where, as here, recall and refund programs are already in place for the products at issue in the action. *See, e.g., Waller*, 295 F.R.D. at 488-89 (class action not superior when defendant offers refund for product because "[i]t makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress") (citation omitted); *Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011) (class action not superior because defendant was offering refund); *Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 151 (E.D.N.Y. 2012) (noting "[t]he wisdom of the Plaintiffs' decision to forgo the Recall program is questionable, particularly in light of the number of cases that have denied class certification in consumer class actions because a voluntary recall and/or refund program provided a superior method of compensating the putative class members") (citation omitted) (collecting cases); *In re PPA Prods. Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003) (when defendant is offering refund and product replacement to all purchasers, class mechanism is unnecessary).

1    Here, General Mills' refund and replacement program is available for free to all putative

2   members of the class and is a superior—and easier, more efficient and cost-effective—way of

3   addressing the refund Plaintiffs seek in the class action. "Where available refunds afford class

4   members a comparable or even better remedy than they could hope to achieve in court, a class

5   action would merely divert a substantial percentage of the refunds' aggregate value to the class

6   lawyers." *Leonard v. Abbott Labs., Inc.*, 10-cv-4676, 2012 WL 764199, at *27 (E.D.N.Y. Mar. 5,

7   2012) (quoting *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 383-85 (N.D. Ill. 2010)). The

8   refund relief that would be obtained by Plaintiffs if this action proceeded to be tried would be

9   reduced by the costs of attorneys' fees and administration, so that the refund of each putative

10  class member would be less than the cost paid by class members for the cereal products. The

11  available program, on the other hand, would allow putative class members to receive full refunds

12  now without subtracting for attorneys' fees and other costs. Thus, "rational class members would

13  not choose to litigate a multiyear class action just to procure refunds that are readily available

14  here and now." *Id.*

15    These cases proceed on common sense—there is simply no need for a class action lawsuit

16  that seeks relief putative class members can obtain *without* the attendant time-consuming, costly,

17  and resource-depleting litigation. Accordingly, the Court should strike the class allegations from

18  the Complaint because Plaintiffs' allegations fail on their face to establish that a class action is a

19  "superior" method of adjudication.

20               **2.    Plaintiffs Are Inadequate Class Representatives.**

21    Rule 23(a)(4)'s adequacy of representation rule requires that a plaintiff show that the

22  proposed action will fairly and adequately protect the interests of the class. *Ellis v. Costco*

23  *Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). Courts have held that the adequacy

24  requirement is not met when the named plaintiff is "pursuing litigation to obtain a . . . remedy that

25  is already on offer." *Waller*, 295 F.R.D. at 490. This reasoning has been extended to the product

26  recall setting, where plaintiffs and their counsel attempt to capitalize on a product recall with

27  duplicative and redundant class litigation that may serve the personal interests of the named

28  plaintiff and her lawyers, but does *not* adequately serve the interests of the putative class. *In re*

-14-

1   *Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) ("A representative who proposes

2   that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense

3   to obtain a refund that already is on offer is not adequately protecting the class members'

4   interests.").

5          Under this authority, Plaintiffs and their counsel will not "fairly and adequately" protect

6   the interests of the class. That is because Plaintiffs want relief (i.e., a refund) that is already

7   available to all members of the putative class. Further, Plaintiffs seek injunctive relief to stop

8   General Mills from selling "Gluten Free" cereal contaminated with wheat flour—but, again,

9   General Mills has already done that by way of the recall itself. *See* RJN Exs. 1-6. In fact, any

10  refund Plaintiffs will procure for class members even if class action litigation is successful will be

11  decreased by attorneys' fees and the costs of class administration, and any injunctive relief will be

12  redundant. But those costs are nonexistent for members of the putative class who choose to

13  exercise their right to a refund *now* through General Mills' refund program. *See* RJN Exs. 1-6.

14  Thus, Plaintiffs' decision to pursue their proposed course of class litigation betrays their

15  inadequacy as class representatives.

16
                **3.      The Proposed Class Is Overbroad Because It Contains Many Putative
17                        Class Members Who Have Suffered No Injury.**

18         Finally, the Court should strike Plaintiffs' class allegations because they propose a class—

19  "All persons or entities who purchased Cheerios or Honey Nut Cheerios advertised as gluten free,

20  and which were not gluten-free"—that contains many members who have suffered no injury

21  whatsoever. *See, e.g.*, *Loreto v. Procter & Gamble Co.*, No. 09cv815, 2013 WL 6055401, at *4

22  (S.D. Ohio Nov. 15, 2013) ("A class is overbroad if it includes significant numbers of consumers

23  who have not suffered any injury or harm."); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241,

24  262 (3d Cir. 2009) (noting that overbreadth "impacts the Rule 23 requirements of commonality,

25  typicality, and predominance of common issues").

26         The *Sanders* case is analogous. There, a putative class action was filed on behalf of "all

27  persons who purchased a 2007 twenty-inch Aluminum iMac desktop computer designed,

28  manufactured, and sold by" Apple. *Sanders*, 672 F. Supp. 2d at 982. The complaint alleged that

1    the iMacs were falsely advertised as displaying millions of colors at high resolutions. The

2    plaintiffs claimed they relied on the false representations in purchasing their iMacs, but the

3    proposed class was defined around ownership, regardless of whether the putative class members

4    were injured by the alleged false representations. The *Sanders* court struck the class allegations

5    because, as in the instant case, the class definition "necessarily includes . . . individuals who

6    either did not see or were not deceived by advertisements, and individuals who suffered no

7    damages." *Id.* at 991; *see also Edwards v. Zenimax Media Inc.*, No. 12-cv-00411, 2012 WL

8    4378219, at *5 (D. Colo. Sept. 25, 2012) ("I find that this definition is inadequate because it is

9    overbroad and includes Colorado residents who presumably purchased Oblivion from anyone,

10   anywhere, at any time regardless of whether he or she was ever injured by or even experienced

11   the alleged Defect.").

12       As in *Sanders*, the class definition here covers anyone who purchased the affected cereal

13   products labeled as "Gluten Free," whether or not the person relied upon the label or

14   advertisement or whether that person was a Cheerios purchaser with gluten intolerance or

15   sensitivity—a population that the Complaint itself acknowledges is only a small proportion of the

16   overall population. *See* Compl. ¶6. The proposed class is thus vastly overbroad and includes

17   individuals who suffered no injury.

18       Because the proposed class action is not superior, and because Plaintiffs are inadequate

19   class representatives and propose an overbroad class definition, the Court should strike Plaintiffs'

20   class allegations from the Complaint.

21
       **C.    The Court May Separately Dismiss Each Cause of Action for Failure to State**
22            **a Claim Under Rule 12(b)(6).**

23       To the extent that the Court does not dismiss the Complaint outright for lack of subject

24   matter jurisdiction, Plaintiffs' claims for relief all suffer from other defects that separately and

25   independently warrant dismissal under Rule 12(b)(6).

26

27

28

1. **Plaintiffs Fail to State a Claim Under the UCL.**

Absence of an adequate remedy at law is an essential element of UCL and FAL claims. *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1259-60 (C.D. Cal. 2003); *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14cv04809, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015) ("Apart from civil penalties, which are not at issue here, the UCL and FAL provide for only equitable relief . . . there is no right to equitable relief or an equitable remedy when there is an adequate remedy at law"). Plaintiffs have acknowledged that the products at issue in the lawsuit are subject to recall (Compl. ¶15), and judicially noticeable materials evidence an associated refund program to accompany the recall. *See* RJN Ex. 3. Thus, a remedial scheme is already available to Plaintiffs and all members of the putative class, and so an adequate legal remedy indisputably exists and Plaintiffs have failed to allege this essential element of a Section 17200 claim. *See Prudential Home Mortg. Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1249-50 (1998) (remedial scheme is an adequate legal remedy negating required element of section 17200 claim). This claim should therefore be dismissed.

2. **Plaintiffs Fail to State a Claim for Unjust Enrichment.**

There is no cause of action for unjust enrichment in California. *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1059 (C.D. Cal. 2014) (dismissing unjust enrichment claim "[b]ecause it is, in fact, not a claim at all"); *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010). Courts dismiss claims for unjust enrichment especially when there are adequate legal remedies available. *See, e.g.*, *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014) (affirming dismissal of unjust enrichment claim because "[i]n light of the adequate legal remedies available, Plaintiffs cannot state a claim for unjust enrichment"); *Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, No. 14cv2006, 2015 WL 510919, at *10 (N.D. Cal. Feb. 5, 2015) (dismissing unjust enrichment claim as duplicative).

Here, Plaintiffs' claim for unjust enrichment seeks disgorgement of General Mills' allegedly unjust gains from selling cereal products at a higher price than they would have been sold had the "Gluten Free" label not been on the cereal boxes. But General Mills is already

1   offering full refunds to all purchasers of the affected cereal. Plaintiffs therefore fail to state a

2   plausible claim for unjust enrichment.

3           **3.**      **Plaintiffs Fail to State a Claim for Breach of Express Warranty.**

4         To sustain a claim for breach of express warranty, Plaintiffs were required to have

5   provided pre-suit notice. A "buyer must, within a reasonable time after he or she discovers or

6   should have discovered any breach, notify the seller of breach or be barred from any remedy."

7   Cal. Com. Code § 2607. "To avoid dismissal of a breach of contract or breach of warranty claim

8   in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller

9   within a reasonable time after discovery of the breach.'" *Alvarez v. Chevron Corp.*, 656 F.3d 925,

10  932 (9th Cir. 2011) (quoting *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142

11  (N.D. Cal. 2010)). "The purpose of giving notice of breach is to allow the breaching party to cure

12  the breach and thereby avoid the necessity of litigating the matter in court. This purpose would be

13  completely undermined if it could be satisfied with the giving of post-suit notice." *Alvarez*, 656

14  F.3d at 932 (citation omitted). Here, Plaintiffs fail to allege they provided the requisite notice. No

15  previous notice for a breach of warranty claim has been alleged, and this claim must thus be

16  dismissed.

17          **4.**      **Plaintiffs Fail to State a Claim Under the CLRA.**

18        Plaintiffs state that they will amend their CLRA claim to seek damages (Compl. ¶71),

19  pursuant to the rule that defendants have 30 days after receipt of such notice to cure the alleged

20  defects. Cal. Civ. Code § 1782(b) ("[N]o action for damages may be maintained under Section

21  1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be

22  given within a reasonable time, to the consumer within 30 days after receipt of the notice.")  But

23  based on the allegations in the Complaint and associated judicially noticeable materials, General

24  Mills has already provided the damages relief sought by Plaintiffs—*all persons* who purchased

25  the affected cereal products are already eligible for a full refund from General Mills. *See* RJN,

26  Exs. 1-6; Compl. ¶15. Plaintiffs are thus ineligible to bring a cause of action for damages under

27  the CLRA. *See Kagan v. Gibraltar Sav. and Loan Ass'n*, 35 Cal. 3d 582, 590 (1984) ("If, within

28

1   this 30-day period, the prospective defendant corrects the alleged wrongs, or indicates that it will

2   make such corrections within a reasonable time, no cause of action for damages will lie.").

3       Therefore, because Plaintiffs have no claim for damages due to General Mills' cure, no

4   claim for equitable remedies for the reasons explained above, they have failed to state a claim

5   under the CLRA and the claim should be dismissed.

6       **5.     Plaintiffs Fail to State Any Claim Against Individual Defendant
         Roxanne Ornelas.**

7

8       All claims against Individual Defendant Roxanne Ornelas should be dismissed because

9   the Complaint is entirely lacking in allegations against her. The Complaint alleges that

10  Ms. Ornelas was a "Manufacturing Manager" at the facility in Lodi, California. Compl. ¶25. But

11  the Complaint fails to allege entirely that she had or exercised any authority whatsoever over the

12  labeling of the products or the "Gluten Free" claim at issue. Likewise, there are no allegations in

13  the Complaint that Ms. Ornelas knew the cereal products were contaminated with gluten prior to

14  the recall or that she had anything to do with the inadvertent contamination. The Complaint thus

15  does not contain "sufficient allegations of underlying facts to give fair notice and to enable"

16  Ms. Ornelas "to defend [her]self effectively" (*Eclectic Props.*, 751 F.3d at 996 (citation omitted)),

17  because it does not state what Ms. Ornelas allegedly did or did not do. Accordingly, given the

18  threadbare nature of the Complaint as to Ms. Ornelas, the allegations against her do not contain

19  any allegations of fact that "plausibly suggest an entitlement to relief" against Ms. Ornelas

20  specifically, and so the claims against her should be dismissed accordingly. *Id.* (citation omitted).

21      Similarly, and to the extent Plaintiffs try to implicate Ms. Ornelas in any of their claims

22  sounding in fraud (and it is unclear if they do, because there are no actual allegations against her),

23  their pleading also fails to satisfy Rule 9(b)'s heightened standards—the Complaint does not

24  contain even a scintilla of the required "who, what, when, where, and how of the misconduct

25  charged." *Cafasso,* 637 F.3d at 1055 (citation omitted).[4]

26  _____

27  [4] Additionally, in the fourth and fifth claims for unjust enrichment and breach of express
    warranty, respectively, Plaintiffs explicitly make allegations against only "General Mills" but not

28  Ornelas. "General Mills" is defined in the Complaint as excluding Ornelas. Compl. ¶24. In
    addition, a breach of express warranty claim cannot be alleged against Ornelas as a matter of law

1   Because the Complaint lacks *any* allegation suggesting that Ms. Ornelas was involved in

2   the labeling, selling, or advertising of the cereal products at issue, and because Plaintiffs have not

3   alleged with particularity any facts to show that Ms. Ornelas played any role in the inadvertent

4   contamination of the affected lots of Cheerios, all claims against Ms. Ornelas should be dismissed.

5   **V.      CONCLUSION**

6   For the foregoing reasons, General Mills respectfully requests that the Court dismiss the

7   Complaint for lack of subject matter jurisdiction, strike Plaintiffs' class allegations pursuant to

8   Rules 12(f) and 23(d)(1)(D), and dismiss Plaintiffs' UCL, FAL, CLRA, Unjust Enrichment, and

9   Breach of Express Warranty claims, and all claims against Individual Defendant Roxanne

10  Ornelas, for failure to state a claim.

11

12  DATED: December 18, 2015                    **PERKINS COIE** LLP

13

14  By: */s/ Charles Sipos*
                                                CHARLES C. SIPOS

15                                              Attorneys for Defendants
16                                              General Mills, Inc., General Mills Sales, Inc.,
                                                General Mills Operations, LLC, and Roxanne
17                                              Ornelas

18

19

20

21

22

23

24

25

26

27  because only "sellers" can make warranties to buyers. *See Weinstat v. Dentsply Int'l, Inc.*, 180
    Cal. App. 4th 1213, 1227 (2010). The Complaint alleges that General Mills, not Ornelas, is the
28  seller of Cheerios products and Ms. Ornelas is thus an improper defendant for such a claim.

DEFENDANTS' MPA IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE
Case No. 15-cv-02262-MCE-KJN